Filed 12/12/13  P. v. Florez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　　　v.<br><br>JOSEPH FLOREZ,<br><br>　　　Defendant and Appellant. | F064311<br><br>(Super. Ct. No. VCF241795)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  Patrick J. O'Hara, Judge.

Han N. Tran, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Stephen G. Herndon, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

In a consolidated jury trial, defendant Joseph Florez was convicted of being a felon in possession of a firearm (former Pen. Code,[1] § 12021, subd. (a)(1), presently

---

[1] All further references are to the Penal Code unless otherwise indicated.

§ 29800, subd. (a); count 7), as well as several other counts stemming from a special circumstance double homicide that occurred during a separate incident. The jury found true special allegations that all counts were committed for the benefit of a criminal street gang in violation of section 186.22, subdivision (b)(1). In a bifurcated proceeding, the trial court found true allegations that defendant suffered three prior convictions within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(i)).

Prior to sentencing, defendant filed a motion for a new trial based on newly discovered evidence. The trial court granted the motion as to all counts stemming from the murder charges, however, denied the motion as to the separate felon in possession of a firearm count (count 7). The prosecution subsequently dismissed without prejudice the charges relating to the murder, and the trial court sentenced defendant to a total prison term of 28 years to life.

On appeal, defendant contends the trial court abused its discretion in failing to grant a new trial as to the gang enhancement on the remaining felon in possession charge, the trial court abused its discretion in denying his motion to sever the felon in possession charge from the murder charges, and the resulting trial denied him due process of law. We reject defendant's arguments and affirm the judgment.

## FACTS

As defendant's new trial motion was granted on the charges stemming from the murder, his only remaining conviction on appeal is the felon in possession of a firearm count. To put defendant's contentions on appeal in context, however, we also recount some of the evidence relating to the murder charges and the new trial motion.

### *Evidence relating to the felon in possession of a firearm charge, count 7*

Blanca Ortega was a longtime friend of defendant. In August or September of 2008, she and Tommy Madrid were taking their infant daughter to a doctor's appointment when she noticed defendant drive past them. Defendant exited his car with a gun and began yelling that Ortega was with a "rat." Madrid immediately ran away. Defendant continued yelling, calling Madrid names, and told Ortega she was with a "rat,"

2.

that she knew better, that Madrid had no respect, and Ortega deserved a man "with respect and power." During the ordeal, Ortega noted defendant had a semiautomatic firearm which he was holding on the top of the car, although she did not recall him pointing it at anyone. Ortega recalled the gun looked heavy. During the incident, Madrid returned, and defendant said something to the effect of "it wasn't over.'

Madrid had a Norteno tattoo across his chest, but he was a gang dropout according to Visalia police officer Luma Fahoum, a member of the gang suppression unit at the relevant time. Madrid had been working with her and had also agreed to give her information.

The Norteno street gang uses various symbols relating to the number 14 or the letter N (the 14th letter of the alphabet), including XIV and X4. Common tattoos among Norteno gang members include the number 14, XIV, XI4, and Visa, which is a specific reference to Visalia and indicates gang members are "claiming" that area.

Visalia police officer Mike Verissimo testified as a gang expert. He explained the Nortenos originated from a prison gang, Nuestra Familia. The gang is very structured, with members on the street getting orders from those higher within the organization. Members have to follow various rules and regulations and "pay taxes" to the gang. If members do not follow the rules of the gang, they can be sanctioned, beaten, or killed.

The Norteno gang's primary activities include murder, attempted murder, assault with a deadly weapon, drug sales, and vandalism. Gangs commit crimes such as murder to boost their reputation, making others perceive them as fearless and ruthless. This benefits the gang by instilling fear in the community and preventing witnesses from testifying. Someone who speaks to law enforcement is perceived as a "rat." There are certain activities frowned upon in the gang culture, including turning on fellow gang members and being a "rat" or a "snitch."

Verissimo was familiar with defendant through his own personal contacts with him as well as through reading reports involving him. He was also aware of conversations obtained through wiretaps where other gang members discussed raising

3.

money for defendant's defense. Further, he was aware defendant's father and brother were also Norteno gang members. He noted defendant had several gang-related tattoos on his body, including Visa 14 on his left shoulder, Visa on his stomach, Norteno on his back, and V-14 on his left hand. In addition defendant has a tattoo of the phrase "can't stop, won't stop," a common tattoo among gang members referring to the gang lifestyle. Based upon his knowledge of defendant, information he had collected from listening to wiretaps, conversations he has had with informants and other officers, and reading "kites" from other high-ranking gang members, Verissimo opined defendant was an active high-ranking Norteno gang member. Specifically, he opined he was a "strong-hold," which would be a person in charge of the tier he is on in the jail. In Verissimo's opinion active gang members would never raise money for the defense of a dropout gang member.

Verissimo noted a gang member's possession of a firearm enhances a gang's reputation because it demonstrates the gang member is fearless and willing to attack his enemies, such as rival gang members, dropout gang members, or someone the gang member feels is a "snitch" or a "rat." Gang members seek respect from citizens and from other gang members by committing crimes and carrying guns. He opined that having a gun and threatening a gang dropout would benefit the gang by discouraging people from dropping out of the gang.

The parties stipulated defendant was a felon and could not legally possess firearms during the relevant time period.

### Evidence relating to the murder charges, counts 1-6

Madrid and Lisa Bourget were killed in December of 2008 while sitting inside a vehicle just outside Madrid's home. The evidence established both were shot multiple times and two weapons were involved: a .40-caliber handgun and a SKS-type rifle. The shots came from the front of the vehicle. Madrid was killed by a .40-caliber handgun that was recovered approximately three weeks after the shooting in the possession of Raymond Angel Nilo, a Norteno gang member from Farmersville.

4.

Officers learned Ayanna Arroyo could have information regarding the murder. After receiving this information, officers arranged for her parole officer to conduct a parole search of her home. Fahoum was one of the officers who arrived for the search. Once the officers arrived, Arroyo told Fahoum she had witnessed the murder. Defendant was placed at the scene by Arroyo. She was subsequently interviewed by detectives and gave conflicting accounts of the shooting. Arroyo testified she initially told the detectives she had not witnessed the shooting, but had only heard rumors defendant was responsible. She claimed she told officers she saw John Rodriguez walk past her shortly after the shooting and give her a cold stare, and she told the officers she believed he was the person who committed the shooting. However, the officers were only interested in defendant. After detectives threatened to take away her children and send her to prison for a fraudulent check found in her home during the parole search, she told them what they wanted to hear.

Arroyo had also previously testified at the preliminary hearing and was extensively impeached with her prior testimony. At that hearing, she testified she had been walking down the street with two companions when she saw a black car drive by, stop by the car where the victims were sitting, and two people exited and began firing. The men returned to the car and drove away, and as it passed she recognized defendant in the front passenger seat.

Arroyo admitted making these statements at the preliminary hearing, however, she claimed they were not true. At trial she testified she had been coached by the police regarding her statements, she was under the influence of methamphetamine and marijuana on the night of the incident, she was "blind as a bat," and she never actually witnessed the shooting. She also stated she was terrified of the detective questioning her and claimed she was under the influence of Vicodin at the preliminary hearing.

At trial Arroyo was adamant she never actually witnessed the shooting but had only heard the shots from a nearby location and never saw who fired the shots. She claimed she provided the statements the officers wanted because the officers found a

5.

fraudulent check in her home during the parole search and threatened to return her to prison if she did not provide the information they wanted.

Robert Dunlap, an inmate at the Tulare County jail at the relevant times, testified he spoke to defendant after he was arrested. Dunlap stated he was a high-ranking Norteno gang member. He explained Nuestra Familia is the founder of the Norteno gang, and that he was a member of Nuestra Raza, which was just below Nuestra Familia in the gang structure. While at the jail, he was housed on the Norteno gang floor and had contact with Robert Palomino, a high-ranking member of Nuestra Familia who was in charge of the gang at the jail. Palomino shared with him that Madrid had been having an affair with his wife, so he sent a Norteno to kill him. Sometime later, defendant arrived at the jail and was housed on the same floor as Dunlap. Defendant stated he was the new "strong hold" in the jail. A "strong hold" is a member with a lot of gang authority and in charge of everyone within the jail for the gang. Dunlap testified he had conversations with defendant where defendant stated he was the one who killed Madrid for Palomino, and described shooting him while he sat in a car with a woman.

Subsequently, defendant was moved to another floor, but Dunlap still received communications from him in the form of "kites," which are messages with very small writing that inmates use to surreptitiously communicate with each other. Dunlap was directed to send out kites to the gang members on the street informing them of the new leadership and to provide them with "hit lists" for prior gang members who had become "snitches." The gang members were being instructed to kill the people on the lists along with their families. Dunlap wrote out the messages as directed, but turned them over to correctional officers because he disagreed with the directive to kill innocent family members. He also agreed to testify against various gang members.

Dunlap was in custody on rape, robbery, possession of stolen property, and drug charges, and had been given an agreement he would serve no more than 15 years on his charges as a result of his plea in exchange for his truthful testimony.

6.

Other than the testimony of Dunlap and Arroyo, the case against defendant was circumstantial, resting upon evidence of his gang membership and his history of threatening Madrid on multiple occasions due to his status as a Norteno gang dropout. In addition the prosecution produced evidence defendant was seen at the victim's home in a black truck, yelling at the victim shortly before the shooting. The prosecution produced additional evidence from which one could infer defendant had fled the area shortly after the murder and was hiding in Northern California at the home of his girlfriend's parents. Further, the prosecution produced evidence of text messages to defendant from his girlfriend the morning after the murder, telling him to stay where he was and he should not be out late. Defendant was ultimately arrested coming back from the Sacramento area weeks after the murder.

At trial, the defense disputed defendant was an active gang member and claimed he was not the person who committed the shooting. The defense discredited Arroyo through her many inconsistent statements and her inability to observe on the night of the murder. In addition the defense attacked Dunlap's credibility, pointing to his long criminal history and his motivation to testify for a reduced sentence on his current offenses. The defense claimed Dunlap received special favors from correctional officers at the jail. Further evidence was produced at trial establishing there was a partial footprint near an alley close to the scene of the murder that was never compared to anyone. Additionally, some evidence was presented that a witness, who was homeless and intoxicated at the time, indicated someone carrying a gun had run through the alley shortly after the shooting.

**Evidence relating to the new trial motion**

Thomas Wiley, a sentenced prisoner, testified he was housed next to Dunlap at the jail while awaiting trial on his own charges. He stated Dunlap boasted he never spoke to defendant about his case, rather, he gathered information about defendant's case from other inmates and from newspaper articles. Dunlap stated he was going to receive a reduced sentence for testifying against defendant and expected to receive three to four

7.

years rather than the 15 years called for in his plea agreement. Further, Wiley claimed Dunlap was receiving special treatment at the jail from the correctional officers in the form of special food and free telephone calls.

The defense also produced Rudy Velasquez, a former Norteno gang member, who testified that just before the shooting he had been talking to a neighbor and walking back home when he observed a man walk out through an alley. The man passed right by him and Velasquez looked at him and noticed it was not defendant. The man walked up to the car where the victims were sitting. Although Velasquez did not see the shooting, as soon as the man passed and approached the car, he heard the shots. This testimony conflicted with the trial testimony in that the neighbor Velasquez claimed to be speaking with just prior to the murder testified he had not been home when the murder occurred.

## DISCUSSION

### I. Defendant's Failure to Request a New Trial on the Gang Enhancement Forfeited the Claim

After the verdicts were rendered, defendant filed a motion for new trial based upon newly discovered evidence. After a hearing on the motion, the trial court granted the new trial motion as to the counts relating to the murder, but denied the motion as to the separate felon in possession charge. Defendant argues the trial court erred in failing to grant the new trial motion not as to the underlying felon in possession charge, but solely as to the gang enhancement attached to that charge. We conclude defendant's failure to request a new trial on the gang enhancement forfeited the claim for review.

The People claim the issue is not cognizable on appeal for failure to raise it in the trial court. Specifically, plaintiff argues defendant never requested a new trial on the gang enhancement; rather, the motion focused solely on the murder charges. This argument has merit as nowhere in defendant's written motion for new trial does defendant request a new trial on the felon in possession charge or its corresponding gang enhancement. Indeed, at a hearing shortly after the motion for new trial was filed, the trial court questioned whether defense counsel's motion encompassed the felon in

8.

possession charge. The court asked "does this motion for a new trial also have possession of a firearm on a separate date?" The court then commented, "I don't think that this [motion] would apply to that."

At the hearing on the motion, no argument was ever made attacking the gang enhancement defendant now challenges. Defendant never contended any of the newly discovered evidence had any impact on the remaining felon in possession count. Indeed, the only argument related in any way to the felon in possession charge at the hearing was as follows:

> "You have the incident with Blanco [*sic*] Ortega which happened some months earlier for which [defendant] was convicted. And although we don't have any evidence, new evidence in that regard, my argument is that these cases were joined together.

> "The government's theory, [the prosecution] theory, with regards to my motion for severance, is that these two counts are inextricably intertwined. They cannot be pulled together—I mean, pulled apart.

> "So you have Blanco [*sic*] Ortega talking about what [defendant] did. They bootstrap it with Robert Dunlap. And together the effect is very prejudicial.

> "So I think if the murder counts have—fall, which I think they should, then I think that likewise the gun count, which he was convicted of, should fall also."

Defendant counters his counsel asked for a new trial "in all counts" and therefore his argument necessarily encompassed the gang enhancement on the felon in possession charge. This is so, he argues, because a reversal on the substantive offense would necessarily encompass a reversal on the enhancement. While granting a new trial on the substantive offense would have, as a matter of course, also resulted in setting aside the enhancement, the denial of the new trial motion on the substantive offense did not itself preserve the issue of a challenge solely to the enhancement.

It is clear from the record defendant never argued the newly discovered evidence in any way affected any of the findings on gang allegations. In asking the felon in possession charge be set aside, counsel only argued the count should be set aside because

9.

it was joined with the murder count. Counsel conceded there was no new evidence in relation to that charge.

While defendant briefly asked during oral argument that the new trial motion be granted on all counts, he never argued the gang allegations should fall even if the underlying offenses remain. Even after the trial court denied the motion as to the felon in possession charge, defendant never argued the gang allegation should separately fall, nor did he seek a ruling specifically as to the gang enhancement. Also, there was no argument whatsoever that the findings on the gang allegations were in any way affected by the newly discovered evidence. A defendant must specify the grounds relied upon in making a motion for new trial, and failure to raise those grounds in the trial court forfeits the issue for appeal. (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 332; *People v. Masotti* (2008) 163 Cal.App.4th 504, 508.) Even assuming defendant's arguments could be construed as requesting a new trial solely on the gang enhancement, defendant's failure to obtain a ruling on that issue forfeits the issue on appeal. (*People v. Murphy* (1962) 207 Cal.App.2d 885, 888-890 [if court fails to rule upon issue raised by party, it is incumbent upon objecting party to seek ruling, otherwise issue is deemed forfeited].)

By failing to raise these issues in the first instance in the trial court, defendant deprived the court of the opportunity to make the necessary findings.

> "In ruling on a motion for new trial based on newly discovered evidence, the trial court considers the following factors: "'1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on a retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits."'" (*People v. Delgado* (1993) 5 Cal.4th 312, 328; see also *People v. Sutton* (1887) 73 Cal. 243, 247-248.)

Particularly pertinent to this case is the third of these five factors. "'[T]he trial court may consider the credibility as well as the materiality of the evidence in its determination [of] whether introduction of the evidence in a new trial would render a different result reasonably probable.' (*People v. Beyea* (1974) 38 Cal.App.3d 176, 202

[disapproved on other grounds in *People v. Blacksher* (2011) 52 Cal.4th 769, 808].)"
(*People v. Delgado*, *supra*, 5 Cal.4th at p. 329.) "It [would] not [be] improper for the
trial court to deny defendant's motion if it believed [the affiant's] proffered affidavit
lacked credibility and would not have changed the result on retrial." (*People v. Cole*
(1979) 94 Cal.App.3d 854, 860, disapproved on another ground in *In re Kelly* (1983) 33
Cal.3d 267, 277, overruled on other grounds in *People v. Langston* (2004) 33 Cal.4th
1237, 1246.) "The weight and credibility to be attached to the affidavit and testimony in
support of defendant's motion was for the trial judge." (*People v. Hill* (1969) 70 Cal.2d
678, 699.) "'"[I]n determining whether there has been a proper exercise of discretion on
such motion, each case must be judged from its own factual background."'" (*People v.
Delgado*, *supra*, at p. 328; see *People v. Dyer* (1988) 45 Cal.3d 26, 52.)

As conceded by defendant in his opening brief, the trial court never "explicitly
rule[d] on whether to grant a new trial on the gang enhancement for count 7." This is
true in large part because defendant never sought such a ruling. By failing to argue the
newly discovered evidence justified a reversal on the gang enhancement, the issue was
never factually developed. The trial court was never given the opportunity to determine
whether the newly discovered evidence had any bearing on the gang enhancements,
whether the evidence as viewed in context of the gang allegations was credible, whether
the gang evidence provided by Dunlap was merely cumulative of the other gang evidence
presented at trial, or whether there was a reasonable probability of a different result on
the gang enhancements in light of the newly discovered evidence.

The trial court could not have erred by failing to grant a new trial motion on a
ground never raised by that motion. Thus, by failing to raise these issues in the trial
court, defendant has forfeited the claim on appeal. (*People v. Verdugo* (2010) 50 Cal.4th
263, 309; *People v. Masotti*, *supra*, 163 Cal.App.4th at p. 508; *People v. Pratt* (1947) 77
Cal.App.2d 571, 578.)

## II. Defendant's Motion to Sever Was Properly Denied

Defendant claims the trial court abused its discretion in denying his motion to sever the felon in possession charge from the murder charges. The resulting trial was grossly unfair, denying him due process of law. We disagree.

### A. The Trial Court Properly Denied the Severance Motion

Prior to trial, defendant moved to sever the trial of the felon in possession of a firearm charge from the murder charges, contending that allowing evidence of the felon in possession charge would prejudice his right to a fair trial on the murder counts. The defense claimed the felon in possession charge would not be cross-admissible as to the murder charges, and thus constituted improper character evidence. After a hearing on the issue, the trial court denied the motion, explaining:

> "Clearly, in my estimation this is cross-admissible evidence. This goes to motive. This goes to intent. The fact that it wasn't reported until two months later is certainly a subject on cross-examination, but I'm not going to determine that it's so incredible that I would not allow that in.
>
> "And all evidence which tends to show guilt in the broad sense is prejudicial, but this certainly has probative value, which potentially outweighs under 352.
>
> "So I will deny that motion."

Section 954 permits the joinder of "two or more different offenses connected together in their commission, … or two or more different offenses of the same class of crimes or offenses." The law favors joinder of counts because it promotes efficiency. (*People v. Myles* (2012) 53 Cal.4th 1181, 1200.) Even when joinder is proper, the trial court may, "in the interests of justice and for good cause shown," exercise its discretion to order that different offenses or counts be tried separately. (§ 954; see *People v. Thomas* (2012) 53 Cal.4th 771, 798.) "'"The burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried." [Citation.]'" (*People v. Bradford* (1997) 15 Cal.4th 1229, 1315.)

12.

If the trial court denies a motion to sever, the ruling is reviewed on appeal for abuse of discretion. (*People v. Ramirez* (2006) 39 Cal.4th 398, 439.) In determining whether a trial court abused its discretion, we consider the record before the trial court when it made its ruling. (*People v. Thomas*, *supra*, 53 Cal.4th at p. 798.) "We consider first whether the evidence of the two sets of offenses would have been cross-admissible if the offenses had been separately tried. [Citation.] If the evidence would have been cross-admissible, then joinder of the charges was not prejudicial." (*Ibid.*)

If the evidence is not cross-admissible, "we next inquire 'whether the benefits of joinder were sufficiently substantial to outweigh the possible "spill-over" effect of the "other-crimes" evidence on the jury in its consideration of the evidence of defendant's guilt of each set of offenses.' [Citations.] We consider '[1] whether some of the charges are likely to unusually inflame the jury against the defendant; [2] whether a weak case has been joined with a strong case or another weak case so that the total evidence may alter the outcome of some or all of the charges; and [3] whether one of the charges is a capital offense, or the joinder of the charges converts the matter into a capital case.' [Citation.] 'We then balance the potential for prejudice to the defendant from a joint trial against the countervailing benefits to the state.' [Citation.]" (*People v. Thomas*, *supra*, 53 Cal.4th at pp. 798-799.)

Defendant does not argue the counts were improperly joined under section 954; his sole argument focuses on the denial of his severance motion. He claims the trial court abused its discretion by failing to sever the charges. Thus, we will address that issue.

We must first address defendant's severance motion as made in the trial court. Defendant had moved to sever the firearm possession charge on the basis it was unduly prejudicial to the homicide charges. On appeal, defendant abandons that argument and argues the exact opposite: the homicide charges were unduly prejudicial to the firearm possession charges. As defendant failed to present this argument in the trial court, he has forfeited the argument on appeal. (*People v. Stanley* (1995) 10 Cal.4th 764, 798 [asserted ground for severance forfeited where not raised at trial].)

13.

Even if we were to consider defendant's argument, we would find no error. The initial factor to consider in determining whether charges should be severed is the cross-admissibility of the evidence. Here the trial court held the gun possession would be cross-admissible to the murder charge as it provided evidence of both defendant's motive and intent to commit the murders. Defendant does not challenge this finding on appeal. Instead he argues the trial court's failure to consider the remaining factors constituted an abuse of discretion. Not so. As our Supreme Court made clear in *People v. Soper* (2009) 45 Cal.4th 759, 774-775, when considering whether a motion to sever should be granted, the first inquiry is to assess the cross-admissibility of the evidence. If the evidence is cross-admissible, this "factor alone is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges." (*Id.* at p. 775.) If the court finds the evidence of the joined charges was not cross-admissible, the court then considers "'whether the benefits of joinder were sufficiently substantial to outweigh the possible "spill-over" effect of the "other-crimes" evidence on the jury in its consideration of the evidence of defendant's guilt of each set of offenses.'" (*Ibid.*, quoting *People v. Bean* (1988) 46 Cal.3d 919, 938.)

Having found the evidence was in fact cross-admissible, the trial court did not abuse its discretion by failing to proceed to the remaining factors. Even assuming the trial court was required to evaluate the remaining factors, it appears the court actually considered whether the joining of the charges would have a prejudicial effect on defendant. The court found the probative value of the evidence outweighed any prejudice under Evidence Code section 352.

Further, even considering defendant's claim in the manner he raises the issue, we find it lacks merit. As this was not a capital case, that factor has no application here. The remaining factors to consider are whether the joined charges are inflammatory and whether the strength of the cases are such that joinder would lead to the possibility of one case being bolstered by the other. Defendant focuses his argument on the inflammatory nature of the murder charges, arguing that after the jury heard that evidence, it was

14.

prejudiced against him in deciding the felon in possession charge. He claims the prejudice was compounded by the fact the joinder resulted in two weak cases being tried together, increasing the risk the outcome on the felon in possession charge was altered by the murder charges. We disagree.

A similar argument was made and rejected in *People v. Cummings* (1993) 4 Cal.4th 1233. There, the defendant was jointly tried for both murder and several robberies stemming from separate incidents. The trial court held the evidence of the robberies was admissible as evidence of motive on the murder charge. (*Id*. at p. 1284.) On appeal, the defendant argued the trial court erred in denying his severance motion, claiming evidence of the murder may not have been admissible in a trial on the robbery counts. The California Supreme Court rejected the argument, noting "complete cross-admissibility is not necessary to justify joinder." (*Ibid*.) "The state's interest in joinder gives the court broader discretion in ruling on a motion for severance than it has in ruling on admissibility of evidence." (*Ibid.*) The court found the jury was not unduly influenced in its determination of guilt on the robbery charges as a result of the joinder with the murder charges; the evidence of robberies was strong, further dispelling any prejudicial effect of joinder in that case. (*Id*. at pp. 1284-1285.)

Likewise here, the evidence relating to the felon in possession charge was fully admissible in the trial of the murder charges, thus dispelling any suggestion of prejudice on that charge. Even if we were to assume evidence relating to the murder charges would not have been admissible at a separate trial on the felon in possession charge, it is apparent the joinder of the offenses did not result in prejudice to defendant. We disagree with defendant's characterization that the joinder of the offenses resulted in two weak cases being joined together. Rather, it is apparent the felon in possession charge was quite strong. The evidence was based upon Ortega's eyewitness account of the incident. Further, the felon in possession charge itself was distinct from the murder charge, occurring on a separate day and resting upon the testimony of separate witnesses. The

15.

jury was instructed to consider each offense separately, and nothing in the record suggests the jury disregarded this instruction.

Moreover, the evidence relating to the murder charges, when viewed at the time of the motion, was also strong. An eyewitness identified defendant as the shooter and defendant confessed his involvement to a jailhouse informant. Defendant seeks to discount this evidence based upon the witnesses' testimony at trial, however, it is well settled that in evaluating the prejudice we consider the facts known at the time of the motion. (*Frank v. Superior Court* (1989) 48 Cal.3d 632, 640.)

When considering prejudice to a defendant in joining charges, it is important to remember the "danger to be avoided is 'that strong evidence of a lesser but inflammatory crime might be used to bolster a weak prosecution case' on another crime." (*People v. Mason* (1991) 52 Cal.3d 909, 934, quoting *People v. Walker* (1988) 47 Cal.3d 605, 623.) That danger was not present here, as it was in fact the felon in possession charge that was strong.

Furthermore, in weighing any potential prejudice to defendant against the benefits of joinder, we note the felon in possession charge carried with it an enhancement that it was committed for the benefit of a criminal street gang. This charge would have necessarily included the extensive evidence relating to defendant's gang association, as well as his other encounters with Madrid. Separating the cases would have required the duplication of evidence regarding the felon in possession charge as well as the evidence relating to the gang enhancement. Not only would Ortega have to testify twice regarding the same issue, but the evidence relating to defendant's gang involvement would have to be produced multiple times. The duplication of evidence is a significant factor weighing against severance in this case. Moreover, another jury panel would have to be selected, and all of the attendant costs of another trial would be incurred by the state. As our Supreme Court has explained, "severance of properly joined charges denies the state the substantial benefits of efficiency and conservation of resources otherwise afforded by section 954." (*People v. Soper*, *supra*, 45 Cal.4th at p. 782.)

Weighing the considerable benefits of joinder in this case against the possibility of prejudice from hearing the evidence of the murder, we conclude the trial court did not abuse its discretion in denying the motion to sever.

**B.	The Joint Trial of the Charges Did Not Deprive Defendant Due Process of Law**

Defendant contends that even if the trial court's ruling denying his severance motion was correct, the trial resulted in actual unfairness, denying him his right to due process of law. We disagree.

Even where we have determined a motion to sever was properly denied, we must still "'determine whether, in the end, the joinder of counts or defendants for trial resulted in gross unfairness depriving the defendant of due process of law.'" (*People v. Soper*, *supra*, 45 Cal.4th at p. 783.) Reviewing the record in light of the evidence actually introduced at trial, as well as considering the subsequent evidence developed in the new trial motion, we conclude the joinder did not deprive defendant of his constitutional right to a fair trial and due process.

Defendant's argument centers upon the actual trial testimony of Arroyo and the fact defendant was granted a new trial based on newly discovered evidence as to the murder counts. Essentially, defendant reiterates his argument that evidence of the murder charges was so inflammatory it swayed the jury to convict on the felon in possession charge. Defendant's argument fails because the evidence relating to the murder charges had little bearing on his guilt on the felon in possession charge. None of the newly discovered evidence related in any way to Ortega's testimony that defendant confronted Madrid with a gun in September. At trial, the issue related to the murder charges was one of identity. Arroyo and Dunlap supplied the evidence that defendant was the one who committed the shooting through Arroyo's eyewitness account and Dunlap's testimony that defendant admitted committing the shooting. Because doubt was cast on this testimony through Arroyo's statements at trial, and the subsequent evidence produced at the new trial motion, defendant argues, the jury was never able to consider the murder

17.

charges in light of the new evidence, which resulted in an unfair finding on the felon in possession charge.

Defendant's argument hangs upon the premise the evidence relating to the murder charges affected the jury's decision on the felon in possession charge. We disagree with this underlying premise. As we have explained, the issue at trial on the murder charges was one of identity. The issue regarding the felon in possession charge rested solely upon Ortega's credibility. As none of the evidence defendant cites goes to the issue of Ortega's credibility, it is difficult to see how any of that evidence could have prejudiced the defendant on the felon in possession charge. Further, the crimes were factually separate, occurring at different times and places, reducing the likelihood of prejudice. (*People v. Mendoza* (2000) 24 Cal.4th 130, 163 [no due process violation in trying multiple robberies with a murder, arson and rape where offenses were factually distinct].)

As we stated previously, the evidence on the felon in possession charge was strong. The evidence was based upon the testimony of Ortega who witnessed defendant confront the victim with a gun while calling him a "rat." While other evidence relating to the murder was also admitted, it was admitted solely for the proof of those charges. The two offenses were properly joined, and the joint trial of the offenses was not prejudicial. The jury was instructed to consider the offenses separately, and nothing in the record indicates the jury did not follow this instruction. Granted, the actual trial testimony in the murder case was somewhat weaker than anticipated due to Arroyo's inconsistent testimony and the newly discovered evidence. Ultimately, however, the strength of the felon in possession charge was not similarly affected.

The weakening of the murder charge does not lead to the conclusion defendant's trial was grossly unfair. When considering prejudice to a defendant in joining charges, the "danger to be avoided is 'that strong evidence of a lesser but inflammatory crime might be used to bolster a weak prosecution case' on another crime." (*People v. Mason*, *supra*, 52 Cal.3d at p. 934, quoting *People v. Walker*, *supra*, 47 Cal.3d at p. 623.) That danger was not present here, as the weaker case at trial was the murder charge, not the

18.

felon in possession charge.  Because the murder charges were reversed in the new trial motion, defendant cannot be heard to complain as to the prejudicial effect of the joinder of the evidence on the murder charges.  Considering the totality of the evidence, we find defendant has failed to carry his burden in establishing his trial was grossly unfair as to the felon in possession charge.

We also reject defendant's argument, presented for the first time in his reply brief, that the evidence presented at the motion for new trial cast doubt upon the evidence relating to the gang enhancement.  We decline to consider an argument raised for the first time in the reply brief.  (*People v. Adams* (1990) 216 Cal.App.3d 1431, 1441, fn. 2.)

## DISPOSITION

The judgment is affirmed.

_____
PEÑA, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
CORNELL, J.

19.